IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | |
|---|---|
| Fit Body Boot Camp, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Marcus Clark and Kevin Mills, <br><br> Defendants. | Case No. 1:22-cv-06025 <br><br> Judge LaShonda A. Hunt |

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiff Fit Body Boot Camp, Inc. ("FBBC") respectfully submits this Motion for Default Judgment and Permanent Injunction with Incorporated Memorandum of Law.

After multiple defaults and despite being given several chances to comply with the Franchise Agreement, FBBC properly terminated the Franchise Agreement between FBBC and Marcus Clark ("Clark") and Kevin Mills ("Mills", and together with Clark, the "Defendants"). Despite being terminated and served with a demand that Defendants comply with their post-termination obligations and cease infringing on FBBC's trademarks, Defendants continue to operate a competitive business using FBBC's federally registered trademarks in violation of the restrictive covenants in the Franchise Agreement and the law. Accordingly, FBBC respectfully requests that this Court issue an Order pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure that enjoins Defendants from operating a competing business and that enjoins them from continuing to infringe on FBBC's federally registered trademarks. FBBC also seeks to recover unpaid fees and liquidated damages due as a result of Defendants' breach of the Franchise Agreement, and its attorneys' fees and cost incurred in this action Defendants.

## MEMORANDUM OF LAW

### I. INTRODUCTION

FBBC is the franchisor of the Fit Body Boot Camp franchise system. Defendants are former FBBC franchisees. FBBC commenced this action against the Defendants due to their breaches of the Franchise Agreement and their refusal to comply with their post-termination obligations including, but not limited to, their noncompete obligations and their obligation to cease use of FBBC's federally registered trademarks.

FBBC terminated the Franchise Agreement because Defendants were in default of their Franchise Agreement by failing to pay required fees in the amount of $23,701.35. As a result of the early termination, the Franchise Agreement entitles FBBC to Liquidated Damages of $53,892.00.

After the termination of the Franchise Agreement, Defendants breached their post-termination obligations by, among other things: (1) continuing to operate under FBBC's trademarks; and (2) continuing to operate competitive businesses in violation of their restrictive covenants. As a result, FBBC seeks injunctive relief that enjoins the Defendants from continuing to use FBBC's trademarks and operating competitive businesses in violation of the restrictive covenants in the Franchise Agreement.

### II. FACTS

FBBC is the franchisor of the Fit Body Boot Camp franchise system that provides fitness boot camp classes at over 250 franchised locations throughout the United States. Compl. at ¶ 12. FBBC has the right to use and license the "FIT BODY BOOT CAMP" trademarks and related logos, which are registered on the United States Patent and Trademark Office's Principal Register of Trademarks at Nos. 5826276, 5329068, and 3852206, respectively. Compl. [Dkt. 1] at ¶ 9.

Collectively, FBBC's trademarks are called the "Proprietary Marks". *Id.* FBBC has continually used and advertised the Proprietary Marks throughout the country. Compl. [Dkt. 1] at ¶ 11.

### The Franchise Agreements

FBBC franchisees are licensed to use FBBC's Proprietary Marks and to operate under FBBC's business system pursuant to the terms and conditions of the FBBC franchise agreement entered into between each franchisee and FBBC. Compl. [Dkt. 1] at ¶ 13.

On April 21, 2020, FBBC and Defendants entered into a franchise agreement (the "Franchise Agreement") under which Defendants were granted the right and undertook the obligation to operate an FBBC franchised at 1320 Illinois Route 59, Suite 164, Naperville, IL 60563 (the "Premises"). Compl. [Dkt. 1] at ¶ 13, Ex. A.

Pursuant to Section 4.2(a) of the Franchise Agreement, Defendants were required to pay to FBBC: (a) a weekly royalty fee of $997 (the "Royalty"); (b) a monthly Software Reimbursement fee of $300 (the "Software Fee"); and (c) a Marketing and Promotion Fund Contribution of $500 (the "Marketing Fee", and collectively with the Royalty and Software Fee, the "Fees"). Compl. [Dkt. 1] at ¶ 16, Ex. A.

In the event of an early termination of the Franchise Agreement, the post-termination provisions of the Franchise Agreement prohibit Defendants for twelve months after the termination of the Franchise Agreement from owning, in any part, or engaging in a competing or substantially similar business that was located at the Premises, within twenty-five miles of the Premises, or within a twenty-five-mile radius of any other FBBC franchised location. Compl. [Dkt. 1] at ¶ 17, Ex. A at §11.2

Pursuant to the Franchise Agreement, any amounts not timely paid when due to FBBC incur a late fee of five percent. Compl. [Dkt. 1] at ¶ 25, Ex. A. Furthermore, FBBC is entitled to

collect reimbursement of its costs in collecting unpaid debts owed by Defendants. Id. Finally, FBBC is entitled to liquidated damages of $53,892.00 as a result of the early termination of the Franchise Agreement, calculated as thirty-six months of required Royalty and Marketing Fee payments. Compl. [Dkt. 1] at ¶ 22, Ex. A at §13.9.

### Defendants' Breach of the Franchise Agreement

Beginning in May 2021, Defendants ceased making required Fee payments. Compl. [Dkt. 1] at ¶ 28, Ex. E. As a result, on January 21, 2022, FBBC issued a Notice of Delinquency. Compl. [Dkt. 1] at ¶ 30, Ex. B.

### Termination of the Franchise Agreement and Breach of the Post-Termination Obligations

Defendants failed to cure the defaults identified in the Notice of Delinquency. Compl. [Dkt. 1] at ¶ 31. As a result, on July 18, 2022, FBBC issued a Termination Notice. Compl. [Dkt. 1] at ¶ 33, Ex. C.

Despite being served with the Termination Notice, the Defendants have refused to cooperate with their post-termination obligations under the Franchise Agreement including, but not limited to, ceasing their use of the Proprietary Marks and providing competitive services under FBBC's proprietary business system. Compl. [Dkt. 1] at ¶¶ 33-34.

On November 1, 2022, FBBC filed a Complaint with this court to recover unpaid Fees and liquidated damages and to enjoin Defendants from continuing to operate under FBBC's Proprietary Marks and operating a competitive business in violation of their restrictive covenants. Compl. [Dkt. 1].

### Entry of Default

Defendants have not responded to Plaintiff's Complaint, nor have they taken any other action to appear or otherwise contest Plaintiff's claims. See Status Report [Dkt. 17], Pl.'s Request

4

for Default [Dkt. 18]. Accordingly, on February 20, 2023, the Clerk of Court recorded an entry of default against Defendants. *See* Minute Entry Order [Dkt. 20]. Now, Plaintiff seeks to receive a permanent injunction against Defendants to enjoin their unlawful use of FBBC's trademarks and the breach of their post-termination noncompete obligations. FBBC also seeks a default judgement against Defendants for the unpaid Fees and liquidated damages as a result of Defendant's breach of the Franchise Agreement, as well as its attorney's fees and costs against the Defendants, as explained more fully below.

## II. STANDARD OF REVIEW

Default judgment is granted when "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed.R.Civ.P. 55(a). Furthermore, upon default "the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Prod., Inc.,* 722 F.2d 1319 (7th Cir. 1983). Further, as a general rule, a default judgment establishes that defendants are liable to a plaintiff as to each cause of action alleged in the complaint. *Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.,* 687 F.2d 182 (7th Cir. 1982).

To obtain a permanent injunction, FBBC must show: "(1) that it has suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering balance of hardships between plaintiff and defendant, a remedy in equity is warranted; and (4) that public interest would not be disserved by permanent injunction." *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139 (2010).

## III. FBBC IS ENTITLED TO A PERMANENT INJUNCTION ON ITS TRADEMARK INFRINGEMENT CLAIMS

FBBC has prevailed on its breach of restrictive covenant claim against Defendants because Defendants have failed to answer or otherwise defend against FBBC's claims, resulting in an entry

of default against them in this case. Defendants acknowledged in the Franchise Agreement that their use of the Proprietary Marks was temporary and that use without FBBC's consent is an infringement of FBBC's rights. Compl. [Dkt. 1] at ¶ 19-20, Ex. A. Nevertheless, Defendants continue to operate a competing business offering the same services under the Proprietary Marks as before termination of the Franchise Agreement in violation of those restrictive covenants.

### A. FBBC Has Suffered Irreparable Injury

"The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424 (7th Cir. 2001). FBBC has suffered severe damage to its reputation and goodwill because Defendants continue to provide the same services provided by FBBC's franchisees under FBBC's Proprietary Marks after Defendants' Franchise Agreement was terminated and FBBC lost control of the quality of the services provided. Accordingly, Defendants' continued, wrongful use of FBBC's Proprietary Marks has caused and will continue to cause substantial and irreparable injury to Plaintiff, and Plaintiff is entitled to a permanent injunction to enjoin Defendants' wrongful conduct.

### B. Monetary Damages are Inadequate to Compensate for FBBC's Injury

"Proving monetary loss due to infringement is notoriously difficult." *Vacation Rental Partners, LLC v. VacayStay Connect, LLC,* No. 15 CV 10656, 2017 WL 1150806 (N.D. Ill. Mar. 28, 2017). A lack of control over a Defendant's unauthorized use of trademarks "weighs in favor of granting a permanent injunction." *MetroPCS v. Devor*, 215 F. Supp. 3d 626 (N.D. Ill. 2016). Monetary damages are inadequate to compensate for FBBC's injury because the Defendants'

conduct has not merely injured FBBC financially but has already caused and will continue to cause substantial and irreparable harm to FBBC's reputation and the goodwill of its entire franchise system.

Despite losing authorization to use FBBC's Proprietary Marks, Defendants continue to operate their business that performs the same services as an FBBC franchisee while bearing FBBC's Proprietary Marks within the same territory in which Defendants was authorized to operate before the Franchise Agreement was terminated. They continue to use FBBC's Proprietary Marks despite FBBC's repeated demands that they cease and desist. Undoubtedly, therefore, Defendants' continued use of the FBBC Proprietary Marks after termination of the Franchise Agreement constitutes infringement, causes consumer confusion in violation of the Lanham Act, and has injured and will continue to cause injury to Plaintiff's intellectual property rights, its reputation, and the goodwill of its entire franchise system. Accordingly, monetary damages alone are insufficient to compensate FBBC for Defendants' past and continued trademark infringement, and FBBC is entitled to secure a permanent injunction against Defendants to end Defendants' wrongful conduct.

C. **The Balance of Hardships Weighs in Favor of FBBC**

Defendants have not appeared to identify any hardships they would face if an injunction were awarded to FBBC and the Court is not required to speculate as to the harms Defendants might face or make arguments on their behalf. *BrightStar Franchising, LLC v. N. Nevada Care, Inc.,* No. 17 C 9213, 2020 WL 635903 (N.D. Ill. Feb. 11, 2020). Enjoining Defendants from continued use of FBBC's Proprietary Marks does not impose any meaningful burden on them. Indeed, ceasing all use of FBBC's Proprietary Marks is precisely what Defendants promised to do upon termination of the Franchise Agreement. Defendants have no truthful or credible claim that the

balance of harms would favor them, particularly because it is Defendants' own actions which caused the termination and any resulting harm. Therefore, in this instance, the injury to FBBC conspicuously and greatly outweighs any potential harm to Defendants.

### D. Permanent Injunction Advances the Public Interest

"The public…has an interest in knowing with whom they do business." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424 (7th Cir. 2001). In this instance, the permanent injunction requested by FBBC advances the public interest by dispelling the inevitable and real confusion created by the Defendants' infringement. Accordingly, the public interest supports the issuance of a permanent injunction on FBBC's Lanham Act claims.

## IV. FBBC IS ENTITLED TO A PERMANENT INJUNCTION ENFORCING THE NON-COMPETE PROVISION

FBBC is also entitled to a permanent injunction based on Defendant's breach of the noncompete provision contained in Section 11.2 Franchise Agreement. The Franchise Agreement contains a noncompete provision prohibiting Defendants from operating "a fitness business or business offering or selling goods or services equivalent to [FBBC]" for a period of twelve months following the termination of the Franchise Agreement that was located at the Premises, within twenty-five miles of the Premises, or within a twenty-five mile radius of any other FBBC franchised location. Compl. [Dkt. 1] Ex. A at § 11.2. Nevertheless, Defendants continue to operate a competing business offering the same services as before termination of the Franchise Agreement from the Premises where they operated their formerly franchised business in violation of those restrictive covenants.

### A. FBBC Has Suffered Irreparable Harm Due to Defendants' Breach

"The injuries that flow from the violation of a non-compete are difficult to prove and quantify, making such an injury a canonical form of irreparable harm." *BrightStar Franchising,*

8

*LLC v. N. Nevada Care, Inc.,* No. 17 C 9213, 2020 WL 635903 (N.D. Ill. Feb. 11, 2020). Evidence supporting the finding of irreparable harm is manifest in this case: Defendants were exposed to FBBC's confidential information and taught FBBC's business system. In defiance of their unmistakable obligation not to compete, Defendants are using FBBC's confidential information, and pirating and trading upon the goodwill associated with FBBC, thereby causing irreparable injury. Further, if the Defendants are not enjoined, FBBC cannot effectively protect FBBC's Proprietary Marks in the territory and cannot prevent lost sales and lost goodwill. Defendants' conduct threatens FBBC's entire franchise operation; if they are not enjoined, other franchisees may assume that their franchise agreements are unenforceable and ineffective and do the same. As a result, the Court should find that Defendants cannot rebut the presumption of irreparable harm and FBBC has certainly proven it will suffer irreparable harm as a result of the Defendants violating their covenants not to compete.

    **B.    Monetary Damages are Inadequate to Compensate FBBC for Defendants' Breach**

"Restrictive covenants are prime candidates for injunctive relief." *Turnell v. CentiMark Corp.,* 796 F.3d 656 (7th Cir. 2015). Defendants' breaches, "if left unchecked, might cause little harm…or they might cause great harm. But either way, the magnitude and even the existence of the injury will be difficult to discern," leaving injunctive relief as "the best, and probably only, adequate remedy" for a violation of a non-compete agreement. *Id.* Defendants have breached and will continue to breach the restrictive covenant not to compete with FBBC in the absence of the Court's issuance of a permanent injunction enjoining such wrongful conduct. Monetary damages would not adequately compensate for FBBC's injury in this instance because the primary injuries sustained by FBBC in this matter are those to its reputation, its right to freely control the operations of its franchisees, and to the goodwill that FBBC has expended considerable time, money, and

9

effort to build within its franchise system. Because monetary damages alone would not serve to remedy FBBC's injuries in this instance, Plaintiff respectfully requests that this Court order a permanent injunction enjoining Defendants' past and future injurious conduct.

### C. The Balance of Hardships Weighs in Favor of FBBC

Defendants would suffer no harm whatsoever were the Court to issue a permanent injunction in this instance. Defendants entered the Franchise Agreement and enjoyed the benefit thereof. They cannot disregard their restrictive covenant obligations, deprive FBBC of the benefit of its bargain, and unfairly interfere with the preservation of FBBC's customer relationships and goodwill. Furthermore, Defendants breached their Franchise Agreement obligations despite being given many opportunities to maintain the franchise relationship. FBBC provided Defendants with notice that Defendants were in material breach of the Franchise Agreement, provided an opportunity to cure, and Defendants subsequently refused to comply with their obligations, which resulted in termination of the Franchise Agreement.

Moreover, the harm to FBBC is substantial if Defendants fail to comply with the restrictive covenant. FBBC invested immense resources in developing and establishing the value of the Proprietary Marks and associated goodwill in the territory and throughout the country. If Defendants are allowed to continue violating the restrictive covenant, FBBC will likely lose the value of the Proprietary Marks and associated goodwill and will likely encounter extraordinary difficulty in entering the market served by Defendants' former franchise. Additionally, other franchisees may perceive the lack of enforcement and similarly disregard their obligations. Accordingly, the balance of hardships weighs heavily in FBBC's favor.

### D. A Permanent Injunction Advances the Public Interest

A permanent injunction will serve the public interest because enforcement of a valid

restrictive covenant ensures "those that make contractual promises honor such promises." *Preferred Landscape & Lighting, LLC v. Alban,* 162 F. Supp. 3d 746 (N.D. Ill. 2016). Defendants have not appeared and cannot articulate a substantial public policy interest against a permanent injunction. Accordingly, this Court should find that the public interest supports an injunction under these circumstances.

## VI. FBBC IS ENTITLED TO DEFAULT JUDGMENT ON ITS CLAIM FOR UNPAID ROYALTIES AND LIQUIDATED DAMAGES

Defendants have failed to answer or otherwise defend against FBBC's breach of contract claim for unpaid Fees and liquidated damages, and therefore FBBC is entitled to default judgment on this claim.

It is undisputed that Defendants materially breached the Franchise Agreement by failing to pay Fees due under the Franchise Agreement. At the time of termination, Defendants owed FBBC $23,701.35 in unpaid Fees and $1,185.07 in late fees. Compl. [Dkt. 1] at ¶ 70; Ex. E. Further, as a result of the termination, FBBC is entitled to liquidated damages pursuant to Section 13.9 of the Franchise Agreement in the amount of $53,892.00. Compl. at ¶ 67; Ex. A at §13.9. Accordingly, FBBC is entitled to judgment in its favor and against Defendants in the amount of $78,778.42.

## VII. FBBC IS ENTITLED TO ITS ATTORNEYS' FEES UNDER BOTH THE FRANCHISE AGREEMENT AND UNDER THE LANHAM ACT

### A. FBBC Is Entitled to Its Attorneys' Fees Under the Lanham Act

FBBC is entitled to recover its reasonable attorneys' fees under the Lanham Act. Pursuant to Section 1117(a) of the Lanham Act, a prevailing party in a trademark infringement action may recover reasonable attorneys' fees in "exceptional" cases. 15 U.S.C. §1117(a). "These provisions are properly invoked when…the infringement is deliberate" *Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.,* 874 F.2d 431 (7th Cir. 1989) (finding an award of attorneys' fees to the

prevailing party in a trademark infringement action was appropriate when a franchisee knowingly and continuously infringed upon plaintiff's registered trademarks).

In the instant case, Defendants have continually, knowingly, and maliciously infringed upon FBBC's trademarks, in violation of both the Lanham Act and the Franchise Agreement. Defendants have also failed to answer or otherwise defend against FBBC's claims, such that the Clerk of this Court has recorded an entry of default against them. Were it not for Defendants' continued wrongful and harmful conduct, FBBC would not have been forced to bring this action to enforce its rights. In sum, this case is precisely the type of "exceptional" case contemplated by the Lanham Act's provision authorizing an award of reasonable attorneys' fees to a prevailing party. Accordingly, FBBC respectfully requests the Court enter an order finding FBBC is entitled to recover its attorney's fees under the Lanham Act and directing FBBC to file its motion for attorneys' fees and costs pursuant to Local Rule 54.3.

### B. FBBC Is Entitled to Its Attorneys' Fees Pursuant to the Franchise Agreement.

The Franchise Agreement entered into between the parties in this matter specifically provides the Defendants will pay FBBC's attorneys' fees upon certain enumerated events. Specifically, pursuant to Section 16.2 of the Franchise Agreement, Defendant agreed to "defend and indemnify [FBBC]….from or against any and all [l]osses directly or indirectly arising out of, relating to, or in connection with a Proceeding", where "Proceeding" means "any…completed suit." Compl. [Dkt. 1] Ex A at § 16.2. Moreover, pursuant to Section 14.4 of the Franchise Agreement, Defendants agreed and acknowledged that, in the event FBBC commenced an action to enforce the terms of the Franchise Agreement, "the prevailing party in any arbitration or litigation to resolve a dispute between any of the parties hereto will be entitled to recover from the losing party reasonable legal fees." *Id.* at § 14.4.

12

As explained above, Defendants' breach of the Franchise Agreement and continued refusal to cease using FBBC's trademarks has forced FBBC to file this action to enforce the restrictive covenants contained within the Franchise Agreement. Because FBBC has succeeded on the merits of its claims (as discussed above), FBBC is the prevailing party and is entitled to recover its reasonable attorneys' fees pursuant to the terms of the Franchise Agreement. Accordingly, FBBC respectfully requests the Court enter an order finding FBBC is entitled to its attorney's fees under Sections 16.2 and 14.4 of the Franchise Agreement, and directing FBBC to file its motion for attorneys' fees and costs pursuant to Local Rule 54.3.

## VIII.  CONCLUSION

For the forgoing reasons, FBBC respectfully requests that this Court enter an Order:

a.  permanently enjoining Defendants, their agents, servants and employees, and those people in active concert or participation with them, from:

1. Using the FBBC Proprietary Marks or any trademark, service mark, logo or trade name that is confusingly similar thereto;

2. Otherwise infringing upon FBBC's Proprietary Marks or using any similar designation, alone or in combination with any other components;

3. Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of Defendants' businesses, goods, or services; and

4. Causing a likelihood of confusion or misunderstanding as to Defendants' affiliation, connection or association with FBBC and its franchisees or any of their goods and services.

b.  permanently enjoining Defendants, their agents, servants and employees, and those people in active concert or participation with them from operating any competitive business that

provides fitness boot camp classes, or assisting any competitor in any way to provide such services and products, for a period of twelve months and within twenty-five miles of their former location at the Premises, and any current franchisee of FBBC from the date of the Defendants' compliance with this Court's Order;

  c. according FBBC a default judgment in the amount of 78,778.43, representing the amount of Fees, late fees, and liquidated damages that Defendants owe to FBBC; and

  d. Such other and further relief as this Court deems appropriate.

Dated: June 27, 2023      Respectfully submitted,

            /s/ *Brian C. Langs*

            *Local Counsel for Plaintiff*

            **MERCER OAK LLC**
            Brian C. Langs (ARDC #6306398)
            29 N. Ada Street
            Chicago, IL 60607
            (872) 248-0601
            brian@merceroaklaw.com

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on June 27, 2023, a true and correct copy of the foregoing was filed with the Court's Electronic Case Filing system, and will be served by mail on the Defendants:

                                                  /s/ Brian C. Langs
                                                  Brian C. Langs

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| Fit Body Boot Camp, Inc., <br><br>     Plaintiff, <br><br>v. <br><br>Marcus Clark, *et al*, <br><br>     Defendants. | Case No. 1:22-cv-06025 <br><br> Judge LaShonda A. Hunt |

**PROPOSED ORDER AND JUDGMENT**

    **THIS CAUSE** is before the Court following the Plaintiff's Motion for Default Judgment and Permanent Injunction. Accordingly, it is **ORDERED AND ADJUDGED** as follows:

    1.    Judgment is entered in favor of Plaintiff Fit Body Boot Camp, Inc. and against Defendants Marcus Clark and Kevin Mills on all claims, in accordance with Rule 55 of the Federal Rules of Civil Procedure.

    2.    Judgment is entered in favor of Plaintiff Fit Body Boot Camp, Inc. and against Defendants Marcus Clark and Kevin Mills, jointly and severally, in the amount of $78,778.42.

    3.    Defendants and their respective agents, employees and members, and any person acting in concert with them are hereby permanently enjoined from using the Plaintiff's trademarks and related logos, which are registered on the United States Patent and Trademark Office's Principal Register of Trademarks at Nos. 5826276, 5329068, and 3852206, respectively, or any colorable imitation in any manner whatsoever.

    4.    Defendants and their respective agents, employees and members, and any person acting in concert with them are hereby permanently enjoined from operating any competitive

business that provides fitness boot camp classes, or assisting any competitor in any way to provide such services and products, for a period of twelve months and within twenty-five miles of their former location at the Premises and any current franchisee of Plaintiff from the date of receipt of notice of this Court's Order.

     5.     The Court reserves jurisdiction to award attorneys' fees and costs.

     6.     Post-judgment interest shall accrue on this judgment pursuant to 28 U.S.C. § 1961.

     7.     To the extent not otherwise disposed of, all pending motions are denied as MOOT and all deadlines are TERMINATED.

**DONE AND ORDERED** on June ___, 2023

                                                                         **LASHONDA A. HUNT**
                                                                         **UNITED STATES DISTRICT JUDGE**